UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN ALONSO CURIEL,<br><br>        Petitioner,<br><br>    v.<br><br>DERRAL ADAMS,<br><br>        Respondent. | Case No.: 1:10-cv-01121-LJO-JLT<br><br>FINDINGS AND RECOMMENDATIONS TO DENY PETITION FOR WRIT OF HABEAS CORPUS (Doc. 1)<br><br>ORDER DIRECTING THAT OBJECTIONS BE FILED WITHIN TWENTY DAYS |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**

Petitioner is in custody of the California Department of Corrections and Rehabilitation ("CDCR") serving an indeterminate sentence of life without the possibility of parole plus a twenty-five-years-to-life enhancement and five concurrent twenty-five-years-to-life terms, pursuant to a judgment of the Superior Court of California, County of Tulare(the "Superior Court"). (Doc. 1, p. 1; Clerk's Transcript ("CT") 624-625). His sentence is as a result of a June 27, 2010 conviction for one count of first degree murder (Cal. Pen. Code § 187(a)); one count of shooting at an occupied motor vehicle (Cal. Pen. Code § 246); and five counts of attempted willful, deliberate, and premeditated murder. (Cal. Pen. Code §§ 187(a), 664). (Doc. 1, p. 1).

1

Petitioner filed a direct appeal in the California Court of Appeals, Fifth Appellate District (the "5th DCA"). On August 11, 2009, the 5th DCA, in an unpublished decision, affirmed Petitioner's conviction. (Doc. 16, Lodged Documents ("LD") 1). Petitioner then filed a petition for review in the California Supreme Court. (LD 2). On October 22, 2009, the Supreme Court denied Petitioner's petition for review. (LD 3).

On June 22, 2010, Petitioner filed the instant petition. (Doc. 1). On August 12, 2010, Respondent filed its Answer. (Doc 15). On October 13, 2010, Petitioner filed his Traverse. (Doc. 19). Respondent concedes that the all grounds for relief in the petition have been fully exhausted. (Doc. 15, p. 7).

## FACTUAL BACKGROUND

The Court adopts the Statement of Facts in the 5th DCA's unpublished decision:

> At or about 1:00 a.m. on May 21, 2006, someone fired shots at Curiel's green SUV at an intersection in Dinuba, striking his passenger and fellow Sureño Luis Ramirez. Curiel told police some Norteños had come after him. Ramirez told police someone wearing a red shirt had shot him. Sureños often wear blue clothing, and Norteños often wear red clothing.
>
> On May 27, 2006, Shaw drove five of his skateboarder friends, none of whom was a gang member, in his pickup to a quinceañera in Sultana where Curiel and Sureño Miguel Carisalas, who wore a semiautomatic gun at his waist, were among the guests. After a lot of people mad-dogged them, Shaw and his friends-Alexander Barrientoz, Daniel Castillo, Henry Castillo, Roger Castillo, and Joseph Mateus-left. Outside, witnesses heard Daniel Castillo yell "Norte" and saw him put four fingers of one hand up-short for "14" (a reference to the 14th letter of the alphabet), which stands for the "N" in Norteño-before Shaw drove away. Curiel and Carisalas sped off in Curiel's green SUV.
>
> Two to three miles away from the quinceañera, as Shaw slowed down for a stop sign, gunfire from a green SUV hit his pickup. Shaw accelerated, but the green SUV followed, and after more gunfire hit his pickup he lost control and crashed. Shaw died of a gunshot wound to the face and blunt force trauma from the crash. Daniel Castillo suffered a fractured skull and a broken ankle from the crash. Shaw's truck showed seven bullet strikes, all on the left side.

(LD 1).

## DISCUSSION

I. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States

Constitution. The challenged conviction arises out of the Tulare County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

II.     Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams v. Taylor, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005), citing Williams v. Taylor, 529 U.S. 326, 405-406 (2000). A state court decision involves an "unreasonable application" of clearly established federal law "if the state court applies [the Supreme Court's precedents] to the facts in an objectively unreasonable manner." Id., quoting Williams, 529 U.S. at 409-410; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)(*per curiam*).

Consequently, a federal court may not grant habeas relief simply because the state court's decision is incorrect or erroneous; the state court's decision must also be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 511 (2003) (citing Williams v. Taylor, 529 U.S. at 409). In

Harrington v. Richter, 562 U.S. ___ , 131 S.Ct. 770 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA.  If fairminded jurists could so disagree, habeas relief is precluded.  Richter, 131 S.Ct. at 786.  As the United States Supreme Court has noted, AEDPA's standard of "contrary to, or involv[ing] an unreasonable application of, clearly established Federal law" is "difficult to meet," because the purpose of AEDPA is to ensure that federal habeas relief functions as a "'guard against extreme malfunctions in the state criminal justice systems,'" and not as a means of error correction.  Richter, 131 S.Ct. at 786, *quoting* Jackson v. Virginia, 443 U.S. 307, 332, 99 S.Ct. 2781, n. 5 (1979)(Stevens, J., concurring in judgment).  The Supreme Court has "said time and again that 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" Cullen v. Pinholster, 131 S.Ct. 1388, 1410-1411 (2011).  Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement."  Richter, 131 S.Ct. at 787-788.

Moreover, federal "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  Cullen, 131 S.Ct. at 1398 ("This backward-looking language requires an examination of the state-court decision at the time it was made.  It follows that the record under review is limited to the record in existence at the same time–i.e., the record before the state court.")

The second prong of federal habeas review involves the "unreasonable determination" clause of 28 U.S.C. § 2254(d)(2).  This prong pertains to state court decisions based on factual findings.  Davis v. Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322 (2003).  Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Wiggins v. Smith, 539 U.S. at 520; Jeffries v. Wood, 114 F.3d at 1500 (when reviewing a state court's factual determinations, a "responsible, thoughtful answer reached after a full opportunity to litigate is adequate to support the judgment").  A

4

1  state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be
2  debatable among reasonable jurists." Id. ; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir.
3  2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004).

4  The AEDPA also requires that considerable deference be given to a state court's factual findings.
5  "Factual determinations by state courts are presumed correct absent clear and convincing evidence to
6  the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a
7  factual determination will not be overturned on factual grounds unless objectively unreasonable in
8  light of the evidence presented in the state court proceedings, § 2254(d)(2)." Miller-El v. Cockrell,
9  537 U.S. at 340. Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of historical or pure
10 fact, not mixed questions of fact and law. See Lambert v. Blodgett, 393 F.3d 943, 976-077 (2004).

11 To determine whether habeas relief is available under § 2254(d), the federal court looks to the
12 last reasoned state court decision as the basis of the state court's decision. See Ylst v. Nunnemaker,
13 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). Where the state
14 court decided the petitioner's claims on the merits but provided no reasoning for its decision, the
15 federal habeas court conducts "an independent review of the record...to determine whether the state
16 court [was objectively unreasonable] in its application of controlling federal law." Delgado v. Lewis,
17 223 F.3d 976, 982 (9th Cir. 2002); see Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).
18 "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions."
19 Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002). Where the state court denied the petitioner's
20 claims on procedural grounds or did not decide such claims on the merits, the deferential standard of
21 the AEDPA do not apply and the federal court must review the petitioner's 's claims de novo. Pirtle v.
22 Morgan, 313 F.3d at 1167.

23 The prejudicial impact of any constitutional error is assessed by asking whether the error had
24 "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v.
25 Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)(holding
26 that the Brecht standard applies whether or not the state court recognized the error and reviewed it for
27 harmlessness). Some constitutional errors, however, do not require that the petitioner demonstrate
28 prejudice. See Arizona v. Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S.

648, 659 (1984). Furthermore, where a habeas petition governed by the AEDPA alleges ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the Strickland prejudice standard is applied and courts do not engage in a separate analysis applying the Brecht standard. Avila v. Galaza, 297 F.3d 911, 918 n. 7 (9th Cir. 2002); Musladin v. Lamarque, 555 F.3d 830, 835 (9th Cir. 2009).

### III.  Review of Petitioner's Claims.

The instant petition itself alleges the following as grounds for relief: (1) error in instructing the jury that specific intent was an element of second degree murder; (2) error in refusing to bifurcate the trial on the gang enhancements; and (3) insufficiency of the evidence.

A.  Instructional Error.

Petitioner initially contends that the trial court erred in instructing the jury that specific intent was an element of second degree murder. This contention is without merit.

1.  The 5th DCA's Decision.

Curiel argues that the trial court precluded jury consideration of second-degree murder as a lesser included offense by improperly instructing the jury that specific intent is a necessary element of second-degree murder including implied malice second-degree murder. The Attorney General argues the contrary.

The trial court instructed Curiel's jury as follows with CALCRIM No. 252 (Union of Act and Intent: General and Specific Intent Together):

"The crimes and other allegations charged in this case require proof of the union, or joint operation, of act and wrongful intent.

"The following crimes and allegations require general criminal intent:

"-brandishing a firearm, an element of the lesser offense of involuntary manslaughter

"-assault with a firearm (the lesser offense of shooting at an occupied motor vehicle [¶] "[-] assault (a lesser offense to assault with a firearm).

"For you to find a person guilty of these crimes, that person must not only commit the prohibited act, but must do so with wrongful intent. A person acts with wrongful intent when he intentionally does a prohibited act on purpose, however, it is not required that he or she intend to break the law. The act required is explained in the instruction for that crime.

"The following crimes and allegations require a specific intent and/or mental state:

"-Murder as charged in Count 1 (Both Murder 1 and Murder 2)

"-Second degree felony murder

"-Voluntary Manslaughter and Involuntary manslaughter

6

"-Attempted Murder as charged in Counts 3 through 7

"-Attempted willful, deliberate and premeditated murder

"-Attempted Voluntary Manslaughter

"-The gang allegations enhancements and the firearm allegations

"-The special circumstance allegations: Murder by a street gang member and Murder by discharge of a firearm from a motor vehicle

"-Shooting at an occupied motor vehicle

"-Criminal liability as an aider and abettor

"For you to find a person guilty of these crimes or to find the allegations true, that person must not only intentionally commit the prohibited act, but must do so with a specific intent and/or mental state. The act and the specific intent and/or mental state required are explained in the instruction for that crime or allegation. Some may require both a mental state and a specific intent. Some may not require a specific intent but require a mental state. Some may not require a specific intent but do require a mental state."

Apart from instructing Curiel's jury on the theory of second-degree felony murder, the trial court instructed on the theory of malice aforethought murder with implied malice by modifying CALCRIM No. 520 (Murder with Malice Aforethought), in relevant part, as follows:

"The defendant is charged in Count 1 with murder. [¶] ... [¶]

"The defendant may be guilty of murder even if another person did the act that resulted in the death. If another person did the act resulting in death, that person is called the perpetrator.

"Murder with Malice Aforethought[.] To prove that the defendant is guilty of the crime of murder with malice aforethought, the People must prove that:

"1. The perpetrator intentionally committed an act that caused the death of another person;

"2. When the perpetrator acted, he had a state of mind called malice aforethought;

"3. Prior to the act causing death, the defendant was aware of the perpetrator's intent to commit the act that caused the death;

"4. Prior to the act causing death, the defendant aided and abetted the perpetrator in the commission of the act that caused death;

"5. Prior to the act causing death, the defendant intended to aid and abet the perpetrator in the commission of the act that caused death; [¶] AND,

"6. [ ] In aiding and abetting the commission of the act that caused death, the defendant intended to cause death, OR, the natural consequences of the act were dangerous to human life, and, the defendant in aiding and abetting the commission of the act that caused death was aware the natural consequences of the act were dangerous to human life.

"There are two kinds of malice aforethought, express malice and implied malice. Proof of either is sufficient to establish the state of mind required for murder.

7

"Express malice is when there is manifested an intention to unlawfully kill a human being.

"Implied malice is when

"1. The killing resulted from an intentional act;

"2. The natural consequences of the act were dangerous to human life;

"3. The act was deliberately performed with knowledge of the danger to, and with conscious disregard for human life.

"Malice aforethought does not require hatred or ill will toward the victim. It is a mental state that must be formed before the act that causes death is committed. It does not require deliberation or the passage of any particular period of time. [¶] ... [¶]

"As to either theory of murder, the defendant must have aided and abetted the perpetrator in the commission of the act causing death before or at the time of the act causing death. To decide whether the defendant aided and abetted a crime, please refer to the separate instructions on aiding and abetting. To decide whether the crime of shooting from [sic ] an occupied motor vehicle was committed, please refer to the instruction relating to that crime found elsewhere in these instructions.

"An act causes death if the death is the direct, natural, and probable consequence of the act and the death would not have happened without the act. A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes. In deciding whether a consequence is natural and probable, consider all of the circumstances established by the evidence.

"You may not find the defendant guilty of murder unless you all agree that the People have proved the defendant committed murder under at least one of these theories. You do not all have to agree the People have proven murder on the same theory [to] find the defendant guilty of murder. However, if you unanimously find the defendant guilty of murder but do not all agree that the People have proven defendant guilty of Murder with Malice Aforethought, you must find him not guilty of murder of the first degree."

With commendable candor, the Attorney General states, "To the extent the instructions stated that implied malice murder requires specific intent, they were erroneous." We agree. (People v. Rogers (2006) 39 Cal.4th 826, 872-873.)  The question before us, then, is whether the error was prejudicial.

The record answers that question in the negative. The trial court instructed the jury with CALCRIM No. 735 (Special Circumstances: Discharge from Vehicle), which states, in relevant part, as follows:

"The defendant is charged with the special circumstance of committing murder by shooting a firearm from a motor vehicle in violation of Penal Code section 190.2(a)(21).

"To prove that this special circumstance is true, the People must prove that:

"1. Miguel Carisalas shot a firearm from a motor vehicle, killing Randall Shaw;

"2. Miguel Carisalas intentionally shot at a person who was outside the perpetrator's motor vehicle; [¶] AND,

"3. Defendant, not the actual killer, and with the intent to kill, aided and abetted Miguel Carisalas in the killing of Randall Shaw."

> So instructed, the jury found the discharge-of-a-firearm-from-a-vehicle special-circumstance allegation true as to the first-degree murder, necessarily resolving adversely to Curiel the factual issue the instructional error omitted about whether he had specific intent. (People v. Coffman and Marlow (2004) 34 Cal.4th 1, 97; People v. Adams (2004) 124 Cal.App.4th 1486, 1495.) On a record like that, a conviction of the charged offense is reversible only if, "after an examination of the entire cause, including the evidence," it appears "reasonably probable" that the defendant would have obtained a more favorable outcome had the error not occurred. (People v. Martinez (2007) 154 Cal.App.4th 314, 337, citing People v. Watson (1956) 46 Cal.2d 818, 836.) That is not the state of the record here. The judgment of conviction of first-degree murder stands.

(LD 1, pp. 4-9).

## 2. The State Court's Adjudication Was Not Objectively Unreasonable.

Federal habeas review of alleged state instructional error is "limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991); see 28 U.S.C. § 2241; see also Rose v. Hodges, 423 U.S. 19, 21 (1975). "[F]ederal habeas corpus relief does not lie for errors of state law." Estelle, 502 U.S. at 67 (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle, 502 U.S. at 67-68. Claims of error in state jury instructions are generally a matter of state law and do not invoke a constitutional question unless they amount to a deprivation of due process. Cooks v. Spaulding, 660 F.2d 738 (9th Cir. 1981) (per curiam).

The fact that a jury instruction was incorrect under state law is not a basis for habeas relief. Estelle, 502 U.S. at 68. Rather, a habeas court must consider "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process' ... not merely whether 'the instruction is undesirable, erroneous, or even universally condemned.'" Henderson v. Kibbe, 431 U.S. 145, 154, 97 S.Ct. 1730 (1977) (*quoting* Cupp v. Naughten, 414 U.S. 141, 146-47, 94 S.Ct. 396 (1973)); California v. Roy, 519 U.S. 2, 5, 117 S.Ct. 337, 338 (1996) (challenge in habeas to the trial court's jury instructions is reviewed under the standard in Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710 (1993) - whether the error had a substantial and injurious effect or influence in determining the jury's verdict.).

Petitioner contends that the instruction on specific intent raised an unconstitutional "impediment" to the jury's consideration of a lesser included offense. (Doc. 1, p. 7). In a non-capital

case, such as the case at bar, a defendant is "entitled to an instruction on a lesser included offense if the evidence would permit a jury to rationally find him guilty of a lesser offense and acquit him of the greater." Keeble v. United States, 412 U.S. 205, 208 (1973). "[T]he failure of a state court to instruct on lesser included offenses [in a non-capital case] fails to present a federal constitutional question and will not be considered in a federal habeas corpus proceeding." Bashor v. Risley, 730 F.2d 1228, 1240 (9th Cir. 1984) (citation omitted); Solis v. Garcia, 219 F.3d 922, 929 (9th Cir. 2000). Although the Supreme Court has never explicitly held that due process gives a federal defendant the right to a lesser included offense instruction, it has held that a statute precluding this type of instruction would raise a constitutional issue. Keeble, 412 U.S. at 213. The court's rationale regarding lesser included offenses extends to lesser related offenses. The Constitution does not require an instruction on lesser related offenses. Hopkins v. Reeves, 524 U.S. 88, 96-97 (1998).

First, Respondent contends that this issue fails to state a cognizable federal habeas claim. (Doc. 15, p. 14). The Court agrees.

As discussed above, in non-capital cases, a failure to give a lesser included offense instruction fails to present a federal question. Solis, 219 F.3d at 929. Thus, a fortiori, the Court must conclude that any contention that the failure to give a lesser included offense instruction created an "impediment" to the jury's consideration of a lesser included offense is likewise non-cognizable. Id.

Moreover, even assuming, arguendo, that a cognizable claim has been stated, Petitioner has failed to show prejudice. After agreeing with the prosecution that the instruction was erroneous, the 5th DCA, reviewing the record for prejudice, noted in its opinion, "the jury found the discharge-of-a-firearm-from-a-vehicle special circumstance allegation true as to the first-degree murder, necessarily resolving adversely to [Petitioner] the factual issue the instructional error omitted about whether he had specific intent. (LD 1 at 9). The Court agrees with the 5th DCA's reasoning. Under such circumstances, Petitioner cannot show that the omission had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637-638 (1993). Accordingly, any error was harmless. Id.

B. Refusal To Birfurcate.

Next, Petitioner contends that the trial court erred in refusing to bifurcate the trial on the gang enhancements. Again, this contention is without merit.

1. The 5th DCA's Decision.

Curiel argues that the trial court tacitly invited the jury to return verdicts reflecting a higher degree of culpability by improperly denying his motion to bifurcate the criminal-street-gang allegations. The Attorney General argues the contrary.

Before trial, Curiel made a motion in limine to bifurcate the section 186.22 criminal-street-gang allegations from the underlying offenses. He noted that "the victims are not gangbangers" but "basically skateboarders." Additionally, he observed, "No one was wearing gang clothing." He denied "hearing anyone yell Norte or flash the number 4" and pointed out that Daniel Castillo, whom the prosecution intended to show yelled it out, "denies it." In short, "The prosecution can prove that the shooter is a gang member without the need of expert gang testimony and all the gang information."

Opposing the motion, the prosecutor argued that there was no basis for bifurcation since the criminal-street-gang allegations were relevant to motive. "In this case," he noted, "there are witnesses that will testify [a] gang slur was yelled out towards the defendant and his partner who is also a southern gang member, Miguel Carisalas, who is actually the shooter." He added, "As the victim sped off, the defendant along with Miguel Carisalas followed them for several miles. The defendant put his associate fellow gang member in a position to continue shooting at the victims." Finally, he emphasized, Curiel "admitted he chased down the victims with his fellow gang member and allowed him to shoot."

The trial court observed there were "several admissible bases" for admitting the evidence pursuant to Evidence Code section 1101.5 Acknowledging that the evidence, even though prejudicial, was "highly probative potentially, depending upon how the trier of fact sees it," the trial court engaged in the weighing process required by statute and found the evidence more probative than prejudicial. (Evid.Code, § 352.)

The trial court has broad discretion to decide whether to bifurcate the section 186.22 criminal-street-gang allegations from the underlying offenses even if some of the evidence admissible for proof of the criminal-street-gang allegations is inadmissible for proof of the underlying crimes. (People v. Hernandez (2004) 33 Cal.4th 1040, 1048-1051 (Hernandez).) As Hernandez emphasized, "evidence of gang membership is often relevant to, and admissible regarding, the charged offense. Evidence of the defendant's gang affiliation-including evidence of the gang's territory, membership, signs, symbols, beliefs and practices, criminal enterprises, rivalries, and the like-can help prove identity, motive, modus operandi, specific intent, means of applying force or fear, or other issues pertinent to guilt of the charged crime." (Id. at p. 1049.)

Seeking to distinguish Hernandez, Curiel argues that "there was a lack of evidence that [he] knew Carisalas or ever associated with him." He notes that he and Carisalas "arrived separately at the quinceañera" and that there was "no other evidence that they had even met each other prior to the shooting. Without the evidence of common gang membership, the prosecution would have had a heavy burden to show that [he] knew of Carisalas'[s] state of mind; that heavy burden was shifted to the single factor of common gang membership. With the atrocious reputation that criminal street gangs have in the community, the jury was invited to find all the mental elements of the murder and attempted murder counts and their enhancements through the factor of group association alone, and not on relevant evidence."

We disagree. "Even if some of the evidence offered to prove the gang enhancement would be inadmissible at a trial of the substantive crime itself-for example, if some of it might be

11

excluded under Evidence Code section 352 as unduly prejudicial when no gang enhancement is charged-a court may still deny bifurcation." (Hernandez, supra, 33 Cal.4th at p. 1050.) The analogy between bifurcation and severance is imperfect, but even so "the trial court's discretion to deny bifurcation of a charged gang enhancement is similarly broader than its discretion to admit gang evidence when the gang enhancement is not charged." (Ibid.)

Here, the evidence admissible for proof of the criminal-street-gang allegations included a gang expert's testimony that murder, attempted murder, shooting at occupied vehicles, and assault with firearms were among the primary activities of the Sureños and that the charged crimes would have benefited the gang by showing that taunting the gang, as Daniel Castillo did at the quinceañera, is disrespect that the gang will not tolerate and that will bring retaliation-even the ultimate crime of homicide-to instill fear of the gang in the community. Likewise, the evidence was relevant to the issue of Curiel's motive to pursue Shaw's pickup to let Carisalas shoot at the people who taunted the gang, to show his loyalty to the gang and to a fellow gang member, and to raise his own status in the gang.

The trial court carefully instructed the jury with CALCRIM No. 1403 (Limited Purpose of Evidence of Gang Activity):

"You may consider evidence of gang activity *only* for the limited purpose of deciding whether:

"The defendant acted with the intent, purpose, and knowledge that are required to prove the gang-related crime[s] and enhancements and special circumstance allegations charged; [¶] OR

"The defendant had a motive to commit the crimes charged.

"You may also consider evidence of gang activity for the limited purpose of evaluating the credibility or believability of a witness [¶] AND [¶] considering the facts and information relied on by an expert witness in reaching his opinion.

"*You may not consider this evidence for any other purpose. You may not conclude from this evidence that the defendant is a person of bad character or that he has a disposition to commit crime.*"

The ruling denying Curiel's motion was well within the trial court's broad discretion to decide whether to bifurcate the criminal-street-gang allegations from the underlying offenses.

(LD 1, pp. 9-12)(Emphasis supplied).

   2. <u>The State Court's Adjudication Was Not Objectively Unreasonable.</u>

As correctly argued by Respondent, there is no clearly established Federal law which holds that joinder or consolidation of charges may violate the Constitution. In <u>United States v. Lane</u>, 474 U.S. 438, 446 n. 8, 106 S.Ct. 725 (1986), the Supreme Court stated in a footnote that "[i]mproper joinder does not, in itself, violate the Constitution. Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." However, in <u>Young v. Pliler</u>, the Ninth Circuit noted:

<u>Lane</u> considered only the effect of misjoinder under Federal Rule of Criminal Procedure 8, and expressly stated that no constitutional claim had been presented. See <u>Lane</u>, 474 U.S. 438, 446

12

& n. 9, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986). Thus, Lane's broad statement-found in a footnote without citation to any legal authority-that misjoinder could only rise to the level of a constitutional violation if it was so prejudicial as to violate due process, was probably dictum. Only Supreme Court holdings are controlling when reviewing state court holdings under 28 U.S.C. § 2254; Court dicta and circuit court authority may not provide the basis for granting habeas relief. Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003).

Young, 273 Fed.Appx. 670, n. 1, 2008 WL 1757564 (9th Cir.2008) (unpublished); see also Collins v. Runnels, 603 F.3d 1127, 1132–33 (9th Cir.2010).

In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id. Given that there is no clearly established Federal law in this instance, the Court cannot grant relief, since habeas relief is triggered only when the state court adjudication runs afoul of clearly established federal law.

However, even assuming, arguendo, that the Supreme Court's footnote could be considered clearly established Federal law, no constitutional violation occurred in this case. "Improper joinder does not, in itself, violate the Constitution. Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his right to a fair trial." United States v. Lane, 474 U.S. 438, 446, fn. 8. Joinder of offenses results in a constitutional violation only if it renders a state trial unfair and violates due process. Herring v. Meachum, 11 F.3d 374, 377 (2nd Cir. 1993). A defendant must show that actual prejudice resulted from the events as they unfolded during trial. Herring, supra, 11 F.3d at 378, citing Opper v. U.S., 348 U.S. 84, 94-95 (1954). This prejudice is shown if the impermissible joinder had a substantial and injurious effect or influence in determining the jury's verdict. See Bean v. Calderon, 163 F.3d 1073, 1086 (9th Cir.1998); see also, Spencer v. Texas, 385 U.S. 554, 562 (1967) (while some prejudice may flow from joinder of offenses in criminal offenses, the risk is justified by convenience and guarded against by limiting instructions); Featherstone v. Estelle, 948 F.2d 1497, 1503 (9th Cir. 1991) (consolidation rests in the sound discretion of the state trial court).

In the instant case, Petitioner has not made the required showing that joinder of Petitioner's substantive charges with his gang enhancement charges resulted in actual prejudice. As thoroughly discussed by the state appellate court, and contrary to Petitioner's assertion in his Traverse that the gang evidence "was simply not probative as to any issue," (Doc. 19, p. 18), the gang evidence was relevant to the charged offense by providing a motive for Petitioner's conduct, and by providing a context for Petitioner's actions, i.e., to instill fear in the community toward any who would taunt or criticize Petitioner's gang or its members.  Thus, evidence of Petitioner's gang involvement provides needed context and motive for why Petitioner and Carisalas pursued a group of non-gang victims and shot at their vehicle, killing one of them.  This alone would have made the evidence relevant. Moreover, the jurors were instructed in the narrow use of the evidence by the instructions given by the trial court.  (CT, p. 483; LD, pp. 11-12).  They were expressly warned not to use the evidence for any other purpose or to conclude that Petitioner was a person of bad character or that he had a disposition to commit crime.   Jurors are presumed to follow the instructions.  Greer v. Miller, 483 U.S. 756, 767 n. 8 (1987); Aguilar v. Alexander, 125 F.3d 815, 820 (9th Cir. 1997).  Overall, the evidence on the substantive charges and the enhancements were easily compartmentalized and not likely to cause juror confusion.  See Herring v. Meachum, supra, 11 F.3d 374, 378; Closs v. Leapley, 18 F.3d 574, 578 (8th Cir. 1994) (evidence was simple and distinct enough so there was no possibility of juror confusion). Accordingly, the state court's adjudication of this issue was not contrary to nor an unreasonable application of clearly established federal law.  Finally, Petitioner fails to demonstrate that the prejudicial effect of the evidence outweighed the probative value such that Petitioner was denied his constitutional right to a fair trial, or that failure to bifurcate the trial had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 637-638.  Accordingly, this claim should be rejected.

      C.  Sufficiency of the Evidence.

Finally, Petitioner contends that insufficient evidence was presented that Petitioner was aware of other individuals in the vehicle sufficient to sustain convictions for attempted murder.  Again, this contention lacks merit.

      1.  The 5th DCA's opinion.

Curiel argues that an insufficiency of the evidence of his knowledge of the presence of five people in the pickup other than Shaw requires the reversal of all five attempted willful, deliberate, and premeditated murder counts. The Attorney General argues the contrary.

Curiel argues that the record "lacks evidence on how visible" the five other people in the pickup were and that a perpetrator's knowledge of a victim's presence is necessary to support the requisite finding of specific intent to kill. We agree, of course, that specific intent to kill is an element of attempted willful, deliberate, and premeditated murder. (People v. Smith (2005) 37 Cal.4th 733, 739.) We disagree with the other aspects of his argument, however.

On a claim of insufficient evidence, "we 'examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence-evidence that is reasonable, credible and of solid value-such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.]" (People v. Guerra (2006) 37 Cal.4th 1067, 1129, limited on another ground by People v. Rundle (2008) 43 Cal.4th 76, 151.) "Unless it is clearly shown that 'on no hypothesis whatever is there sufficient substantial evidence to support the verdict' the conviction will not be reversed. [Citation .]" (People v. Quintero (2006) 135 Cal.App.4th 1152, 1162.) We apply the same standard to convictions based largely on circumstantial evidence. (People v. Meza (1995) 38 Cal.App.4th 1741, 1745.)

With commendable candor, Curiel acknowledges that "Carisalas fired multiple shots from the passenger seat of [Curiel's SUV]," that there were "seven bullet strikes to the left side of [Shaw's] pickup," that one bullet struck Shaw "in the face, killing him," and that Benjamin Eli Alvarez testified from the point of view of the perpetrators about "the circumstances leading up to the shootings." Alvarez testified that he was with Curiel and Carisalas at the quinceañera in Sultana and that after he heard someone from a group of "at least five" skateboarders at the quinceañera yell out "Norte" in Carisalas's direction he saw Carisalas speed away with Curiel in Curiel's SUV. He testified that at the party in Orosi after the quinceañera in Sultana Carisalas told him "they had shot at some people" because "they were Norteños" and Curiel told him "they had switched some words with some other people"-not with "one person" but with "a group of people." He testified that Curiel told him he had driven after a group of some skateboarders because they had yelled out "Norte" and that Carisalas told him he had gotten angry and "had shot at some busters" (a derogatory Sureño word for Norteños) after hearing the word "Norte."

The record shows that Curiel and Carisalas intentionally created a "kill zone" to kill Shaw, the primary victim, and to kill everyone else in the pickup (with the six bullets that did not hit Shaw or in the crash that predictably followed the killing of Shaw). The doctrine of transferred intent is inapplicable to attempted willful, deliberate, and premeditated murder, but a person who shoots at a group of people can still be punished for the actions towards everyone in the group even if that person primarily targeted only one of them. (People v. Bland (2002) 28 Cal.4th 313, 329 (Bland).) So "although the intent to kill a primary target does not transfer to a survivor, the fact the person desires to kill a particular target does not preclude finding that the person also, concurrently, intended to kill others within what it termed the 'kill zone.'" (Id. at pp. 329-330.)

"'The intent is concurrent,' Bland explained, "when the nature and scope of the attack, while directed at a primary victim, are such that we can conclude the perpetrator intended to ensure harm to the primary victim by harming everyone in that victim's vicinity. For example, an assailant who places a bomb on a commercial airplane intending to harm a primary target on board ensures by this method of attack that all passengers will be killed. Similarly, consider a defendant who intends to kill A and, in order to ensure A's death, drives by a group consisting of A, B, and C, and attacks the group with automatic weapon fire or an explosive device devastating enough to kill everyone in the group. The defendant has intentionally created a

'kill zone' to ensure the death of his primary victim, and the trier of fact may reasonably infer from the method employed an intent to kill others concurrent with the intent to kill the primary victim. When the defendant escalated his mode of attack from a single bullet aimed at A's head to a hail of bullets or an explosive device, the factfinder can infer that, whether or not the defendant succeeded in killing A, the defendant concurrently intended to kill everyone in A's immediate vicinity to ensure A's death. The defendant's intent need not be transferred from A to B, because although the defendant's goal was to kill A, his intent to kill B was also direct; it was concurrent with his intent to kill A. Where the means employed to commit the crime against a primary victim create a zone of harm around that victim, the factfinder can reasonably infer that the defendant intended that harm to all who are in the anticipated zone.' " (Bland, supra, 28 Cal.4th at p. 330, *quoting* Ford v. State (1993) 330 Md. 682 [625 A.2d 984, 1000-1001, fn. omitted].)

Congruently, the trial court instructed Curiel's jury as follows with CALJIC No. 8.66.1 (Attempted Murder-Concurrent Intent):

"A person who primarily intends to kill one person, may also concurrently intend to kill other persons within a particular zone of risk. This zone of risk is termed the 'kill zone.' The intent is concurrent when the nature and scope of the attack, while directed at a primary victim, are such that it is reasonable to infer the perpetrator intended to kill the primary victim by killing everyone in that victim's vicinity.

"Whether a perpetrator actually intended to kill the victim, either as a primary target or as someone within a 'kill zone' zone of risk is an issue to be decided by you."

Here, the evidence and the charge to the jury alike show that a reasonable trier of fact could find Curiel guilty beyond a reasonable doubt of all five counts of attempted willful, deliberate, and premeditated murder. His insufficiency of the evidence argument simply asks us to reweigh the facts. That we cannot do. (People v. Bolin (1998) 18 Cal.4th 297, 331-333.)

(LD 1, pp. 12-15).

### 2. The Evidence Was Sufficient.

The law on sufficiency of the evidence is clearly established by the United States Supreme Court. Pursuant to the United States Supreme Court's holding in Jackson v. Virginia, 443 U.S. 307, the test on habeas review to determine whether a factual finding is fairly supported by the record is as follows:

"[W]hether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

Jackson, 443 U.S. at 319; see also Lewis v. Jeffers, 497 U.S. 764, 781 (1990).  Thus, only if "no rational trier of fact" could have found proof of guilt beyond a reasonable doubt will a petitioner be entitled to habeas relief.  Jackson, 443 U.S. at 324.   Sufficiency claims are judged by the elements defined by state law.  Id. at 324, n. 16.

16

A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. Payne v. Borg, 982 F.2d 335, 338 (9th Cir. 1992). The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt.'" See id., *quoting* Jackson, 443 U.S. at 319. Only where no rational trier of fact could have found proof of guilt beyond a reasonable doubt may the writ be granted. See Jackson, 443 U.S. at 324; Payne, 982 F.2d at 338.

If confronted by a record that supports conflicting inferences, a federal habeas court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Jackson, 443 U.S. at 326. A jury's credibility determinations are therefore entitled to near-total deference. Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004). Except in the most exceptional of circumstances, Jackson does not permit a federal court to revisit credibility determinations. See id. at 957-958.

Circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a conviction. Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995). However, mere suspicion and speculation cannot support logical inferences. Id.; see, e.g., Juan H. v. Allen, 408 F.3d 1262, 1278-1279 (9th Cir. 2005)(only speculation supported conviction for first degree murder under theory of aiding and abetting).

After the enactment of the AEDPA, a federal habeas court must apply the standards of Jackson with an additional layer of deference. Juan H., 408 F.3d at 1274. Generally, a federal habeas court must ask whether the operative state court decision reflected an unreasonable application of Jackson and Winship to the facts of the case. Id. at 1275.[1]

Moreover, in applying the AEDPA's deferential standard of review, this Court must also presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1); Kuhlmann v. Wilson, 477 U.S. 436, 459, 106 S.Ct. 2616 (1986). This presumption of correctness applies to state

---

[1] Prior to Juan H., the Ninth Circuit had expressly left open the question of whether 28 U.S.C. 2254(d) requires an additional degree of deference to a state court's resolution of sufficiency of the evidence claims. See Chein v. Shumsky, 373 F.3d 978, 983 (9th Cir. 2004); Garcia v. Carey, 395 F.3d 1099, 1102 (9th Cir. 2005).

appellate determinations of fact as well as those of the state trial courts. Tinsley v. Borg, 895 F.2d 520, 525 (9th Cir.1990). Although the presumption of correctness does not apply to state court determinations of legal questions or mixed questions of law and fact, the facts as found by the state court underlying those determinations are entitled to the presumption. Sumner v. Mata, 455 U.S. 539, 597, 102 S.Ct. 1198 (1981).

Recently, in Cavazos, v. Smith, __U.S. __, 132 S.Ct. 2 (2011), the United States Supreme Court further explained the highly deferential standard of review in habeas proceedings, by noting that Jackson

> "makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was "objectively unreasonable." Renico v. Lett, 559 U.S. ——, ——, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010) (internal quotation marks omitted).
>
> Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.

Cavazos, 132 S.Ct. at 3.

> "Jackson says that evidence is sufficient to support a conviction so long as 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' 443 U.S., at 319, 99 S.Ct. 2781. It also unambiguously instructs that a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id., at 326, 99 S.Ct. 2781.

Cavazos, 132 S.Ct. at 6.

Here, Petitioner argues that insufficient evidence was presented that either Petitioner or Carisalas "knew of the presence of other persons in the truck" necessary to prove the attempted murder charges. (Doc. 1, p. 3). Petitioner maintains that the two "did not necessarily see how many people were in the cab of the truck, or how many people if any were in the bed of the truck." (Id., p. 9). Petitioner concludes that since attempted premeditated murder requires the specific intent to kill each victim, that requirement could not be met if he did not "necessarily see" if, or how many, persons were in the vehicle. (Id.). Petitioner repeats this argument in his Traverse. (Doc. 19, pp. 24-32). This

contention is without merit.

As the 5th DCA's opinion noted, there was specific evidence from which a reasonable juror could infer that Petitioner and Carisalas knew of the existence of multiple individuals in the vehicle: i.e., a group of five individuals shouted "Norte" at the quinceanera, and shortly afterward Petitioner and Carisalas went after them in Petitioner's car; Carisalas told a witness afterward that he and Petitioner shot at some individuals because they were in a rival gang—the Nortenos; and Carisalas also told others afterwards that he and Petitioner had words with "a group of people."   Together, this evidence, while not overwhelming, clearly meets the minimum constitutional requirements for sufficient evidence that Petitioner and Carisalas were aware that more than one individual was in the target vehicle.  Thus, giving full deference, as the Court must, to the state court's adjudication of this issue, see Cavazos, 132 S.Ct. at 3, this Court cannot say that the state adjudication was contrary to or an unreasonable application of the Jackson standard.  Accordingly, this claim should be rejected.

**RECOMMENDATION**

Accordingly, the Court RECOMMENDS that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1), be DENIED with prejudice.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within twenty (20) days after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the Objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the Objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).

///

///

///

The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

| Dated: | **February 20, 2013** | **/s/ Jennifer L. Thurston** |
|---|---|---|
| | | UNITED STATES MAGISTRATE JUDGE |